**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BERNARD PAYNE, JR., on behalf of himself and all other plaintiffs similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>THE YERBA MATE CO., LLC; THE YERBA MATE, LLC; GREG LECHWAR; and TODD RICH,<br><br>Defendants. | Case No. 23-cv-00186<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

The Yerba Mate Co., LLC ("Yerba Mate") moves to compel arbitration in this putative class action brought by Bernard Payne, Jr. ("Plaintiff") under the Fair Labor Standards Act, 29 U.S.C. §216(b), the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq*., and the Chicago Minimum Wage Ordinance § 6-105-040 of the Municipal Code of Chicago. For the reasons stated herein, the motion to compel arbitration [21] is granted.

**I. Background**

Yerba Mate is a Florida-headquartered company that sells a variety of beverage products to supermarkets and grocery stores. [1] at ¶ 6. Plaintiff alleges that he was employed by Yerba Mate as a delivery driver between February 2019 and August 31, 2022. *Id*. at ¶¶ 15-16. Plaintiff worked many hours in the City of Chicago. [1] at ¶¶

27-28. While employed at Yerba Mate, Plaintiff alleges he was paid a salary of approximately $35,000 a year that was "intended to compensate him for approximately 48 to 50 hours per week." *Id.* at ¶¶ 17, 45. He further alleges that he was misclassified as being a salaried employee exempt from the FLSA. *Id.* at ¶ 19. Plaintiff also alleges that he did not receive additional compensation for working more than 48 hours and was not paid overtime for eligible hours over 40 hours. *Id.* at ¶ 17.

On August 26, 2022, Plaintiff signed a four-page document titled "Arbitration Agreement" ("Agreement"). [31-1] at 1 (Declaration of Robert Payne Jr., "Payne Decl."). On that date, Plaintiff reported for his duties at approximately 5 a.m. and participated in the "morning huddle". *Id.* During the meeting, Plaintiff's boss alerted him to outstanding emails, with attached documents, which required his signature. *Id.* at 1-2. Plaintiff's boss informed him that there were two documents in particular that were pending in his email that needed his attention. *Id.* at 2. The Agreement needed to be signed immediately before his shift could begin; the other document could be signed over the weekend. *Id.*

Plaintiff had previously received assistance from another management employee to read company emails and documents because Plaintiff is not technologically savvy. *Id.* As of August 2022, that employee was no longer employed at the company. *Id.* Plaintiff thus told his boss he would try to get some help over the weekend to get the documents opened, signed and returned. *Id.* Plaintiff needed help to access the document because Plaintiff's phone screen was cracked and he has glaucoma, making

it difficult to read small print. *Id*. Plaintiff's boss offered to help him and held Plaintiff's phone in her hand to access Plaintiff's email. She then opened the document, scrolled to the last page of the document, and helped Plaintiff electronically sign the document. *Id*. at 2-3. She then authorized Plaintiff to begin his morning delivery route. *Id*.

Plaintiff's boss did not describe the document to Plaintiff or reference the document as an "Arbitration Agreement". *Id*. at 3. Plaintiff claims he did not have knowledge of the terms or requirements of the document that he signed. *Id*. Plaintiff was subsequently terminated approximately one to two business days later. *Id*.

The Agreement contains provisions addressing arbitration and class actions. [22] at 3-4. In that agreement, the "Parties mutually promise and agree that all Covered Claims (defined below in Section 2) between Employee and anyone at the Company, shall be resolved solely and exclusively by binding, individual arbitration enforceable under and governed by the Federal Arbitration Act." [31-2] at ¶ 14. "The arbitration shall be conducted before a single arbitrator, administered by Judicial Arbitration & Mediation Services, Inc ("**JAMS**")" and conducted under JAMS Employment Arbitration Rules and Procedures." *Id*. Covered Claims are defined as "worker classification, untimely or unpaid wages … and Claims for violation of any federal, state, local or other governmental law, statute, constitution, regulation or ordinance, including, but not limited to. . . the Fair Labor Standards Act. . . ." *Id*. at 3. The Agreement further states in bold capital letters:

> **EMPLOYEE'S SIGNATURE BELOW ATTESTS TO THE FACT THAT EMPLOYEE HAS READ, UNDERSTANDS, AND**

**VOLUNTARILY AGREES TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. EMPLOYEE FURTHER UNDERSTANDS THAT THIS AGREEENT REQUIRES EMPLOYEES TO ARBITRATE ANY AND ALL COVERED CLAIMS THAT ARISE OUT OF EMPLOYEE'S EMPLOYMENT, AND EMPLOYEE IS WAIVING ANY RIGHT TO TRIAL BY JURY ON THOSE CLAIMS.**

[31-2] at 4. Unless the parties mutually agree otherwise, "such arbitration will be conducted within 45 miles of where Employee is or was last employed by the Company." *Id*. at 5. In a section titled **Class Action Waiver**, the Agreement states:

> Both Employee and the Company waive the right to pursue or assert any Covered Claim, whether in court or in arbitration, as a class, collective, and/or representative action, or as a member in any such class and/or collective action, and the Parties agree that any individual Claims may not be consolidated in any way with other Claims involving any other individuals or parties without the express written consent of both Employee and an authorized representative of the Company.

*Id*. at 5.

On January 12, 2023, Plaintiff brought this putative class action against Yerba Mate [1]. On April 17, 2023, Yerba Mate filed the instant motion to compel arbitration, or in the alternative, strike collective and class action allegations [21], [22].

## II. Standard

Under the Federal Arbitration Act "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

213, 218 (1985). It reflects a "liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places "arbitration agreements on an equal footing with other contracts," *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Concepcion*, 563 U.S. at 339). "When deciding whether parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco Rest., Inc. v. Steak N Shake Enterp., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 619 (7th Cir. 2021) (cleaned up).

Under the FAA, in response to an opposing party's refusal to arbitrate despite a written agreement for arbitration, a party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The party seeking to compel arbitration bears the burden to show an agreement to arbitrate. *Id.*; *see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). "The court may consider exhibits and affidavits regarding the arbitration agreement in question." *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018). Once the moving party makes its initial showing, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported

arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id*. "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id*. As with summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Id*. If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." *Id*. (quoting 9 U.S.C. § 4).

### III. Analysis

Plaintiff disputes that he contracted to arbitrate his claims in the first place, and additionally argues that the Agreement, to the extent there is one, is unconscionable. [31] at 4-12. Arbitration is a matter of contract; thus the Court must first decide whether a contract has been formed before it can order arbitration. *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986)).

#### A. Enforceable Arbitration Agreement

State law controls the determination of this issue. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). Under Illinois law,[1] an enforceable contract requires an offer, acceptance, and consideration. *Jefferson v. Credit One Bank, N.A.*,

---

[1] The parties agree that Illinois law applies. [22] at 7; [31] at 6.

No. 21 C 532, 2021 WL 4894704, at *3 (N.D. Ill. Oct. 20, 2021) (citing *DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004)). It is undisputed that Plaintiff signed his own name; therefore the Court does not address the acceptance prong of the analysis.

1. *Offer*

Plaintiff argues that the agreement did not constitute a valid offer because he was not allowed the opportunity to review it. [31] at 6-8. Under Illinois law, a valid offer "induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (internal citations omitted). Plaintiff claims he was not technologically savvy, required help to access documents, had glaucoma and difficulty reading small print, and his phone screen was damaged and cracked. [31] at 4-8. Plaintiff thus asked his boss if he could review the document that weekend with his wife. His boss denied that request. *Id.* Instead, his boss told him he could not work that day if he didn't sign the Agreement. *Id.* His boss then took his phone, opened the Agreement, scrolled down to the signature line and clicked "sign" before handing Plaintiff his phone for his electronic signature. *Id.* Plaintiff further did not know he was signing an arbitration agreement and had no knowledge of the terms or requirements of the Agreement. Payne Decl. at 3.

Defendants argue that this was not the first time Plaintiff was presented with the Agreement. The record establishes that Plaintiff was in fact sent the Agreement nine times via email (June 10, 2022; June 27, 2022; July 11, 2022; July 12, 2022; July 20,

2022; July 28, 2022; August 5, 2022; August 22, 2022; August 26, 2022). [34-2] at 4 (Certificate of Completion).

Although this Court has sympathy for Plaintiff, as a matter of law, the Agreement was an offer because the offeror, Yerba Mate, provided a document characterized as an arbitration agreement to Plaintiff nine times. *See Boomer*, 309 F.3d at 414 (finding an offer where the letter accompanying the contract explicitly stated the terms of the agreement). Here, preceding the signature line, the Agreement states "EMPLOYEE'S SIGNATURE BELOW ATTESTS TO THE FACT THAT EMPLOYEE HAS READ, UNDERSTANDS, AND VOLUNTARILY AGREES TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS." [31-2] at 4. These unambiguous terms constitute a valid offer, which Plaintiff could have read at any time between June 10 and the day he signed the Agreement.

2. *Consideration*

Plaintiff next argues that there was no bargained for consideration to support the Agreement because his employment was terminated. This argument fails. Courts have held that bilateral agreements to arbitrate constitute consideration to enforce the contract. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997) ("Often, consideration for one party's promise to arbitrate is the other party's promise to do the same.") (internal citations omitted); *see also Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367-68 (7th Cir. 1999) (distinguishing *Gibson* where there was no mutual agreement to arbitrate). Here, the Agreement provides that the "[p]arties mutually promise and agree that all Covered Claims…

shall be resolved … by binding, individual arbitration . . . .". [22-1] at 1. The Agreement has adequate consideration.

### B. Unconscionability of the Agreement

Under Illinois law, provisions of a contract may be procedurally or substantively unconscionable. *Razor v. Hyundai Motor Am.*, 654 N.E.2d 607, 622, 222 Ill. 2d 75, 305 Ill. Dec. 15 (2006). "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. Factors to be considered are all the circumstances surrounding the transaction[,] including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability. *"Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 23–24, 857 N.E.2d 250, 264–65 (2006) (citing *Franks Mainternance & Eng'g, Inc., v. C.A. Roberts Co.*, 866 Ill.App.3d 980, 989-90, 408 N.E.2d 403, 42 Ill.Dec.25). "[W]hatever other context there might be in which a contractual provision would be found to be procedurally unconscionable**,** that label must apply to a situation … where plaintiff … never saw the clause; nor is there any basis for concluding that plaintiff *could* have seen the clause, before entering into the sale contract." *Razor,* 222 Ill.2d at 101-02.

On this issue, *Kinkel* is instructive. There, the Illinois Supreme Court found the contract was not procedurally unconscionable because the plaintiff had the terms and

conditions in her possession and either read them or *could* have read them. 223 Ill.2d at 26. So too here. Although the Court finds the actions of Plaintiff's boss on August 26, 2022 troubling (*i.e.,* failing to inform Plaintiff of what he was signing, taking Plaintiff's phone and handing the phone over for Plaintiff to sign, requiring Plaintiff to sign the document before working his scheduled shift), Plaintiff was sent the Agreement *nine* separate times, providing him with ample opportunity to review the contract before signing it.[2]

As discussed *supra*, Plaintiff asserts he did not read the terms of the Agreement. This alone does not render the contract unenforceable. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective, people who accept take the risk that the unread terms may in retrospect prove unwelcome.") (citing *Carr v. CIGNA Securities, Inc.,* 95 F.3d 544 547 (7th Cir. 1996); *see also Founders Ins. Co. v. Father & Son Home Improvement, Il., Inc.*, 2011 WL 24090308, at *4 (Ill. App. Ct. May, 11, 2011) (finding no procedural unconscionability where the plaintiffs did not establish an inability to read the contract in full before signing and noting they were thus presumed to have read, understood and agreed to be bound to its terms). As noted, the Court is troubled by the procedure described, but it does not render the contract unenforceable. The Court therefore finds the contract was not procedurally unconscionable.

---

[2] Although this does not change the result, the Court questions why Plaintiff's boss did not allow him to take the Agreement home for the weekend to review with his wife when his boss allowed him to take a separate document home. The timing is suspect considering Plaintiff was terminated the following week.

A contract is substantively unconscionable when it is "so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 223 Ill.2d at 28. Here, Plaintiff had ample opportunity to review the contract and therefore could not have been surprised by it, and the contract has requirements binding both parties. The fact that Plaintiff's boss required him to sign the contract immediately weighs in favor of unconscionability, but "mere disparity in bargaining power is not sufficient grounds to vitiate contractual obligations." *Streams Sports Club, Ltd. V. Richmond*, 99 Ill.2d 182, 191, 75 Ill.Dec.667, 457 N.E.2d 1226 (1983). The Court therefore does not find the contract substantively unconscionable.

### C. Ability to Conduct Discovery

As a final matter, Plaintiff requests the ability to conduct discovery as to the issues presented before the Court. This is not necessary: Defendants have provided unrebutted evidence that it sent Plaintiff the Agreement nine times via email. [34-2] at 4.

### IV. Conclusion

The evidence presented by Yerba Mate demonstrates that there is a valid and enforceable agreement to arbitrate. Whether the claims raised by Plaintiff are arbitrable is a question delegated to the arbitrator.

Accordingly, Yerba Mate's motion to compel arbitration [21] is granted. This case is stayed pending arbitration. The Parties are to file a status report by April 5, 2024.

E N T E R:

Dated: December 18, 2023

_____
MARY M. ROWLAND
United States District Judge